```
               IN THE UNITED STATES DISTRICT COURT
              FOR THE EASTERN DISTRICT OF VIRGINIA

                         Alexandria Division

DAVID E. HESS,                 )
                               )
     Petitioner,               )
                               )
          v.                   )   CRIMINAL NO. 1:07cr245
                               )   CIVIL NO. 1:08cv902
UNITED STATES OF AMERICA,      )
                               )
     Respondent.               )
```

### <u>M E M O R A N D U M   O P I N I O N</u>

This matter comes before the Court on Petitioner David Hess's ("Petitioner's") motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.  For the following reasons, the Court will deny the motion.

### I. Background

On June 27, 2007, Petitioner pled guilty to interfering with commerce by threats or violence – i.e., Hobbs Act robbery – in violation of 18 U.S.C. § 1951.  One week prior to the plea, he had signed a pre-indictment plea agreement ("Plea Agreement"), acknowledging that he was "satisfied that [his] attorney had rendered effective assistance," that "no threats, promises, or representations have been made, nor agreements reached, other than those set forth in writing in this plea agreement," and that he had read the plea agreement, reviewed it with his attorney,

1

and "underst[ood] and voluntarily agree[d] to it." (Plea Agm't 2, 12, 13.)

Petitioner also signed the statement of facts ("Statement" or "Statement of Facts") that accompanied the Plea Agreement. The Statement relates the following facts. Around the fall of 2003, Petitioner and Mike Linton ("Linton"), a co-conspirator, unlawfully robbed another individual (a cooperating witness, "CW") of a quantity of marijuana. (Stmt. ¶ 1.) CW had placed bets with an illegal gambling business run by Nick Bansal ("Bansal") and another co-conspirator of Petitioner. (Stmt. ¶ 3.) CW offered to sell approximately ten pounds of marijuana to Bansal, with the sale to take place at the Crystal City Restaurant in Arlington, Virginia. (Stmt. ¶ 5.) Bansal recruited Petitioner, Linton, and another co-conspirator to take the marijuana instead of paying for it. (Stmt. ¶ 5.) Petitioner and Linton met CW at the restaurant and took the marijuana against CW's will without paying for it. (Stmt. ¶ 6.) Petitioner then drove away with the marijuana, sold a portion of it, and distributed the proceeds to the illegal gambling business to satisfy CW's debt to the business. (Stmt. ¶ 7.)

Before accepting Petitioner's plea, the Court reviewed the Plea Agreement and the Statement of Facts with him. Petitioner affirmed, under oath, that he had time to consult with his attorney, that his attorney had informed him of the nature

and elements of the offense, and that he had not been threatened or forced to plead guilty. (Plea Tr. 4, 10-11.) At his sentencing, the following exchange between Petitioner, his counsel, the prosecutor, and the Court took place:

> Court: Do you agree you are in fact guilty of this offense?
>
> Petitioner: Your Honor, I would like to say that there was no force used even though the clause says I did.
>
> Def. Counsel: Your Honor, there may have been intimidation.
>
> Prosecutor: Yes, Your Honor, there was a threat of force. I think maybe Mr. Hess is concerned with the charging document which phrases it in the conjunctive, but there was a threat of force or intimidation, Your Honor.
>
> Court: Okay. Do you agree, Mr. Hess?
>
> Petitioner: Yes, I do.

(Plea Tr. 16-17.) The Court then accepted Petitioner's plea.

At the sentencing hearing, Petitioner's counsel argued that he was only the driver of the getaway car rather than the person who actually took the marijuana. He reiterated that Petitioner was not involved in the use of force against the robbery target, and that his role was that of a driver. Petitioner told the Court that "Mr. Litton . . . was the enforcer. He is one of the coconspirators involved. He was the muscle. I was just the pickup guy." (Sentencing Tr. 4-5.) The Court sentenced Petitioner to 33 months' confinement and three

years' supervised release.  Petitioner did not appeal the conviction or the sentence.

On September 3, 2008, Petitioner filed the instant § 2255 motion.  The Government opposed the motion on November 3, 2008, and Petitioner submitted a reply brief on November 21, 2008.  This motion is before the Court.

## II.  Applicable Law

Under 28 U.S.C. § 2255, a prisoner in federal custody may attack his sentence on four grounds: (1) that the sentence was imposed in violation of the Constitution or the laws of the United States; (2) that the court was without jurisdiction to impose the sentence; (3) that the sentence was in excess of the maximum authorized by law; or (4) that the sentence is otherwise subject to collateral attack.  28 U.S.C. § 2255; *see also Hill v. United States*, 368 U.S. 424, 426-27 (1962).  To prevail under § 2255, the movant bears the burden of proof by a preponderance of the evidence.  *Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958).

"'Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.''"  *United States v. Sanders*, 247 F.3d 139, 144 (4th Cir. 2001) (*quoting Bousley v. United States*, 523 U.S. 614, 622

4

(1998)). "The existence of cause for a procedural default must turn on something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel." *United States v. Mikalajunas*, 186 F.3d 490, 493 (4th Cir. 1999). "[T]o demonstrate that a miscarriage of justice would result from refusal of the court to entertain the collateral attack, a movant must show actual innocence by clear and convincing evidence." *Id.*

### III. Analysis

Petitioner raises four grounds for relief in his motion. He claims that: (1) he is legally innocent; (2) he was denied effective assistance because his attorney did not inform him of the elements of the crime; (3) because he was not informed of the elements, his plea was not knowingly and voluntarily made; and (4) he was coerced by his attorney and the Government into pleading guilty. The first three grounds all stem from Plaintiff's belief that his conduct is legally insufficient to establish guilt.

A. <u>Petitioner is Not Actually Innocent</u>

Petitioner stakes his motion on the argument that he is actually innocent of the Hobbs Act robbery charge because he was the getaway driver rather than the individual who actually stole the marijuana. Petitioner, who did not appeal his conviction or sentence, must show his actual innocence by clear and convincing

5

evidence to demonstrate that a miscarriage of justice would result if the Court does not entertain his collateral attack. *Mikalajunas*, 186 F.3d at 493.  His argument fails not only to necessitate a hearing on whether he can show actual innocence by clear and convincing evidence – it fails completely because Petitioner is actually guilty of the crime.  The conduct he admitted establishes his guilt.

Petitioner appears to believe that, because he did not personally apply force to CW in order to take CW's marijuana, he cannot be guilty of an offense under 18 U.S.C. § 1951.  The statute states, in relevant part, that:

> (a) Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires to do so, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.
>
> (b) As used in this section--
>
>> (1) The term "robbery" means the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession . . . .

Petitioner contests his guilt based solely on the fact that he claims to have been the getaway driver rather than the person who applied force or the threat of force to CW.  The facts that

6

Petitioner agreed to in the Statement of Facts, though, establish his guilt under the statute. There, Petitioner agreed that he took an active role in a robbery in which at least the threat of force was present. The law does not require the charged individual to have actually applied force – it also creates criminal liability for those who conspire to do so and for those who take part in a robbery involving the threat of force.

First, Petitioner agreed, under oath, that the Statement of Facts accurately reflected his own conduct. (Plea Tr. 16.) While he raised the argument that no force was actually used during his plea colloquy, he did not otherwise claim that he was not involved in the robbery:

> THE COURT: Do you agree that you are in fact guilty of this offense?
>
> THE DEFENDANT: I do. Your Honor, I would like to say that there was no force used even though the clause says I did.
>
> THE COURT: Okay.
>
> [DEFENDANT'S COUNSEL]: Your Honor, there may have been intimidation.
>
> [PROSECUTING ATTORNEY]: Yes, Your Honor, there was a threat of force. I think maybe Mr. Hess is concerned with the charging document which phrases it in the conjunctive, but there was a threat of force or intimidation, Your Honor.
>
> THE COURT: Okay. Do you agree, Mr. Hess?
>
> THE DEFENDANT: Yes, I do.
>
> THE COURT: Okay. Do you have any additions or corrections to the statement of facts?

>      THE DEFENDANT: No, Your Honor.
>
>      THE COURT: Okay. Do you still wish to plead guilty?
>
>      THE DEFENDANT: Yes, I do.

(Plea Tr. 16-17.)  Before the Court accepted Petitioner's guilty plea, it ascertained that Petitioner did not have any objection to the conduct related in the Statement of Facts except for his contention that he did not personally apply force during the robbery.

The Statement relates that "[Petitioner] went with CW[] to CW[]'s car to obtain the marijuana and signaled [a cooperating co-conspirator] to join him. [Petitioner] and [the cooperating co-conspirator] took the marijuana from CW[] against his will and did not pay him for it."  (Stmt. ¶ 6.)  As an initial matter, then, the Court accepted Petitioner's guilty plea only after establishing that Petitioner agreed to taking action that constituted Hobbs Act robbery.  That Petitioner later amended his involvement in the crime further at his sentencing hearing, by claiming to be "just" the getaway driver, does not undermine the validity of his guilty plea.  "[I]n the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements."  *United States v. Lemaster*, 403

F.3d 216, 221-22 (4th Cir. 2005).  The mere fact that Petitioner now claims that his involvement in the crime was less direct than the involvement related in the Statement of Facts is not an "extraordinary circumstance" that requires an evidentiary hearing.

Even if Petitioner did not directly apply physical force or the threat of force, he conspired to perform the robbery and then actively took part in it.  Bansal recruited Petitioner and Linton to rob CW.  Petitioner drove himself and Linton to the Crystal City Restaurant where, according to his latest version of the events, Linton took the marijuana from CW.  Petitioner then drove the getaway car, sold the marijuana, and disbursed the proceeds back to the illegal gambling ring.

At the sentencing hearing, Petitioner tried to minimize his involvement in the crime by stating that he was "just the pickup guy," and that Litton "was the enforcer" and "the muscle." (Sentencing Tr. 4-5.)  Thus, Petitioner by his own admission implicated himself as the getaway driver for the "enforcer" who was tasked with relieving CW of his marijuana.  And in the Statement of Facts, Petitioner agreed that he was recruited by Bansal "to take the marijuana from CW[] without paying him for it" and that, "[a]t the direction of" Bansal, he took part in the operation.  (Stmt. ¶¶ 5-6.)

9

These facts are sufficient to establish Petitioner's guilt under § 1951.  In *United States v. Burwell*, the Fourth Circuit dealt with similar facts.  162 Fed. Appx. 203, 205 (4th Cir. 2006).  Burwell challenged his conviction for, among other violations, conspiracy to interfere with commerce and interference with commerce by threats and violence by robbing a McDonald's restaurant in Virginia.  *Id.*  Burwell and another individual, Gray, were driving around looking for a place to rob.  Burwell, hungry after such diligent employment, stopped at a McDonald's for food, noticed that the safe was open and that the restaurant was staffed by three women, and returned to the car.  *Id.*  "Burwell and Gray determined that Gray would rob the restaurant, Burwell would wait in the car at a certain location, and they would split the proceeds."  *Id.*  Gray then robbed the McDonald's.  The Fourth Circuit found this evidence "clearly sufficient to show that Gray and Burwell entered into an agreement to commit a robbery, that they committed the robbery, and that the robbery had an effect on interstate commerce."  *Id.* (citations omitted).

In the present case, as in *Burwell*, Petitioner's involvement in the robbery exposes him to criminal liability for both conspiring to commit the crime and for committing the crime.  Petitioner is indeed guilty of the crime to which he pled guilty.

Additionally, although aiding and abetting was not recited in the Criminal Information charging Petitioner, his actions are also sufficient to constitute aiding and abetting, which, pursuant to 8 U.S.C. § 2, makes him "punishable as a principal." That is, Petitioner pled guilty to being a principal participant; his conviction as a principal, however, could also be sustained based on aiding and abetting. *See United States v. Wills*, 346 F.3d 476, 495 (4th Cir. 2003) (citation omitted) ("a conviction under 18 U.S.C. § 2 may be obtained although the defendant was not indicted under § 2").

The Statement of Facts leaves no doubt that Petitioner knowingly associated with and participated in the criminal venture with criminal intent. *See United States v. Burgos*, 94 F.3d 849, 873 (4th Cir. 1996) (citations omitted). That Petitioner pled guilty to being a principal rather to being than an aider and abettor is of no moment, as the conduct that he agrees he engaged in clearly made him punishable as a principal participant in the same crime.

### B. <u>Petitioner Did Not Receive Ineffective Assistance and Was Not Coerced Into Pleading Guilty</u>

Petitioner premises the remainder of his motion on his understanding that he is actually innocent of the crime with which he was charged. Thus, his remaining arguments fail largely as a consequence of his actual guilt. Petitioner argues that his

right to effective assistance of counsel was violated when his attorney urged him to plead guilty to a crime he did not commit. He also argues that his plea was not knowing and voluntary because his attorney failed to inform him of all the elements of 18 U.S.C. § 1951. Petitioner claims that he would not have pled guilty had he known that his conduct did not violate 18 U.S.C. § 1951. Lastly, Petitioner argues that the Government and his attorney coerced him into pleading guilty by threatening Petitioner with charges that carried the possibility of imprisonment for fifteen to twenty years.

To prove that ineffective assistance of counsel violates the Sixth Amendment, a petitioner must satisfy a two-pronged test established by the Supreme Court in *Strickland v. Washington*. 466 U.S. 668, 687 (1984); *see United States v. Terry,* 366 F.3d 312, 314 (4th Cir. 2004). Under the *Strickland* test, a petitioner must show that: (1) his counsel's representation fell short of an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland,* 466 U.S. at 687-94. If a petitioner fails to meet either requirement, his claim for ineffective assistance of counsel cannot proceed. *Strickland*, 466 U.S. at 697. "When a defendant challenges a conviction entered after a guilty plea, [the] 'prejudice' prong

12

of the test is slightly modified.  Such a defendant 'must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  *Hooper v. Garraghty*, 845 F.2d 471, 475 (4th Cir. 1988) (*quoting Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).  Furthermore, if a petitioner fails to make a sufficient showing on one prong of the test, the Court is not obliged to address the other prong.  *Id.* at 700.

      1. <u>Advice to Plead Guilty</u>

      Petitioner's first argument is easily dismissed.  His right to effective assistance was not violated when his lawyer advised him to plead guilty, because Petitioner was in fact guilty, and clearly so.  Advising a client to plead guilty and take advantage of the potential sentencing reductions attendant on a guilty plea when it is clear that the Government will be able to prove guilt at trial does not fall below an objective standard of reasonableness.  Nor would the results of the proceedings have been different had Petitioner pled not guilty.  In fact, had Petitioner decided to take this case to trial, the results would have likely been worse; he would not have the benefit, at sentencing, of accepting responsibility for his crime.

13

### 2. Alleged Failure to Inform Petitioner of the Elements of § 1951

Petitioner alleges that his counsel was ineffective because it did not inform him of the elements of the crime with which Petitioner was charged. Even if this is true, however, Petitioner cannot show that the mistake prejudiced him. He "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hooper v. Garraghty*, 845 F.2d 471, 475 (4th Cir. 1988) (*quoting Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). If counsel had not made the alleged error and had properly informed Petitioner of the elements of the charge against him, the sequence of events would have played out exactly as it did: Petitioner would not have labored under the incorrect impression that he personally needed to have used force to be convicted under § 1951, Petitioner would have recognized his guilt – as there is every indication that he actually did – and Petitioner would have entered the same plea. As noted above, his argument hinges on the fact that he is not really guilty of violating § 1951, and that he would have known of his innocence at an earlier date if he had been properly informed of the elements of the crime. The premise fails, and the conclusion fails as a matter of course.

Even if Petitioner could show prejudice, his late-in-the-game accusations that his counsel failed to meet an objective

14

standard of reasonableness by not informing him of the elements of the crime would be rejected. When evaluating an ineffective assistance of counsel claim made after a guilty plea, statements made under oath – including those made at a Rule 11 plea colloquy – are binding on a petitioner "[a]bsent clear and convincing evidence to the contrary." *Fields v. Attorney Gen. of Md.*, 956 F.2d 1290, 1299 (4th Cir. 1992). "[I]n the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." *United States v. Lemaster*, 403 F.3d 216, 221-22 (4th Cir. 2005).

Here, Petitioner's claims that he received ineffective assistance of counsel and that his plea was involuntary both depend on allegations that contradict his sworn statements at the plea colloquy. Petitioner averred that he had time to discuss the case with his counsel, that he discussed with his counsel the nature and elements of the offense, and that he understood the charges against him. (Plea Tr. 4.) Indeed, Petitioner's knowledge of the elements of the offense was on display during the plea colloquy, in which he clarified for the Court that he did not actually use force against the victim "even though the clause [in the statement of facts] said I did." (Plea Tr. 16.)

15

Petitioner then stated that he was pleading guilty freely and voluntarily. (Plea Tr. 17.)

There are no extraordinary circumstances here, other than the fact that Petitioner changed his story. Petitioner was clearly aware of the elements of the crime charged. There is nothing, except Petitioner's late-breaking and self-serving statements, unsupported and in fact contradicted by his previous sworn testimony, that his plea was not voluntary. The Court will reject Petitioner's arguments that his plea was involuntary and that he received ineffective assistance of counsel.

### 3. Petitioner was Not Improperly Coerced Into Pleading Guilty

Petitioner claims that his counsel sent him a letter that told him that, if he did not cooperate, the Government would file charges carrying a potential term of imprisonment of fifteen to twenty years. This, he claims, amounts to coercion by both his counsel and the Government – coercion that invalidates his plea. *See Machibroda v. United States*, 368 U.S. 487, 493 (1962) ("A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void.")

There are two problems with Petitioner's argument. First, the claim that he was "threatened" with a fifteen- to twenty-year prison term is unconvincing: 18 U.S.C. § 1951 includes a maximum prison term of twenty years. Thus, there was nothing improper or incorrect about Petitioner's counsel or the

16

Government informing him that the charge carried a potential twenty-year prison sentence.

Second, Petitioner's timeline of the purported threats voids his claim. He states that, in a letter dated June 27, 2007, his counsel stated that the Government would file additional charges against him if he did not immediately cooperate. (Pet.'s Mem. in Supp. 10-11 & Ex. 2.) He also claims that, around July 22, 2007, he met with a Government prosecutor who "threatened [Petitioner] with an unrelated marijuana indictment that would expose [Petitioner] to 20 years," which led him to plead guilty to the § 1951 charge. (Pet.'s Mem. in Supp. 11.) Petitioner, however, pled guilty to the § 1951 charge on June 20, 2007. Neither incident he brings up could have coerced him into pleading guilty *before the incident occurred*.

In his reply brief, Petitioner amends his claims by stating that the letter and meeting are examples of a pattern of threatening behavior on the part of his counsel and the Government. These unraveling and conclusory accusations do not merit an evidentiary hearing. Even if the Government or Petitioner's counsel told him that he could be facing a long period of incarceration for his offense, Petitioner has come forward with nothing that indicates that he was not facing a long period of incarceration or that his plea was coerced to the extent that it was involuntary. In fact, he stated, under oath, that no one had threatened him or forced him to plead guilty.

17

(Plea Tr. 10.)  Doubtless Petitioner would rather not have been in a situation where a guilty plea was his best option.  But neither the Court, nor his counsel, nor the Government can be charged with putting him in that situation.  Petitioner's § 2255 motion will be denied in full.

### IV. Conclusion

For the foregoing reasons, Petitioner's Motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 will be denied.

An appropriate Order will issue.

July 9, 2009                                    /s/
Alexandria, Virginia                  James C. Cacheris
                             UNITED STATES DISTRICT COURT JUDGE